IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| CLUB ESCAPADE 2000, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-11-CV-166-KC |
| | § | |
| TICKETMASTER, L.L.C., | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day, the Court considered "Defendant Ticketmaster, L.L.C.'s Motion For Judgment on the Pleadings" ("Motion"), ECF No. 13. For the reasons set forth below, the Motion is **GRANTED** in part and **DENIED** in part.

**I.     BACKGROUND**

Plaintiff Club Escapade 2000, Inc. is a producer of entertainment events. Pl.'s First Am. Compl. ("Compl.") ¶ 6, ECF No. 10. Plaintiff produced a soccer match held at the University of Texas El Paso's ("UTEP") Sun Bowl Stadium on March 25, 2009. Compl. ¶ 6. The match featured Mexico City rivals Cruz Azul and Club America. Compl. ¶ 6. Defendant Ticketmaster, L.L.C. sold the tickets to the match. Compl. ¶¶ 5, 7. Defendant had a contract with UTEP that gave it the exclusive right to sell and distribute tickets for events held at Sun Bowl Stadium. Compl. ¶ 5.

According to Plaintiff, the event was "extremely popular" — traffic was backed up on the highways and news outlets reported large crowds of twenty to forty thousand people attending. Compl. ¶ 8. Much to Plaintiff's surprise, Defendant reported that it had sold only 13,151 tickets. See Compl. ¶¶ 9-10; Pl.'s Resp. in Opp'n to Def.'s Mot. for J. on the Pleadings ("Resp.") 2, ECF

No. 15. These numbers seemed too low to Plaintiff, and Plaintiff began an investigation of Defendant's audit reports. Compl. ¶ 10. Plaintiff allegedly found that on the day before the event, March 24, 2009, Defendant reported that the number of tickets sold was 14,408. Compl. ¶ 10. The very next day, though, the reported number of sales dropped to 11,098. Compl. ¶ 10. According to Plaintiff, this was suspicious because there were no refunds or exchanges. Compl. ¶ 10. Based on this suspicion, Plaintiff hired an expert in digital imaging who examined the video footage of the soccer match. Compl. ¶ 11. The expert estimated that attendance was likely as high as 24,311. Compl. ¶ 11.

On March 24, 2011, Plaintiff sued Defendant alleging conversion, fraud, and negligence. Notice of Removal 1, ECF No. 1. Plaintiff generally alleges that Defendant misrepresented the total ticket sales and wrongfully kept the extra profits rather than forwarding them to Plaintiff. Compl. ¶ 12. On April 26, 2011, Defendant removed the case to this Court based on diversity jurisdiction. Notice of Removal 1, 3. On August 17, 2011, Plaintiff filed an Amended Complaint and added a claim for breach of contract. Compl. ¶ 16.

## II. DISCUSSION

### A. Standard

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to seek judgment on the pleadings. Fed. R. Civ. P. 12(c). The standard applied to a motion for judgment on the pleadings is the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true,

view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Elsensohn v. Saint Tammany Parish Sheriff's Office*, 530 F.3d 368, 371–72 (5th Cir. 2008); *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Still, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011).

Though a complaint need not contain "detailed" factual allegations, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation omitted). Thus, to survive a motion to dismiss, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Id.* at 570; *Colony Ins.*, 647 F.3d at 252. Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In diversity cases, federal courts apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999). Federal courts first look to state statutes and decisions of the state's highest court. *Erie*, 304 U.S. at 78. If there is no law on point, then the federal court "must make an 'Erie guess'" on how the state's highest court would decide the issue. *Krieser*, 166 F.3d at 739, 743. To make an educated guess, federal courts may look to the state supreme court's dicta, lower state court decisions, and decisions

3

from other states. *See id.* at 739-743; *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992).

In this case, Plaintiff alleges four claims under Texas law: conversion, fraud, negligence, and breach of contract. Compl. ¶¶ 14, 16, 21, 23. Defendant argues that Plaintiff insufficiently pleaded three of its four claims: conversion, fraud, and negligence.[1] Mot. 1. The Court examines each in turn.

**B.     Conversion**

Defendant argues that Plaintiff's claim for conversion is insufficient because the money allegedly converted does not qualify as specific chattel. Mot. 4. Additionally, Defendant argues that Texas law does not allow a conversion claim for "lost profits." Mot. 6. Plaintiff responds that it has pleaded factual allegations that support a claim for conversion, and that the money at issue does qualify as specific chattel. Resp. 3-5.

To state a claim for conversion, the plaintiff must show that (1) the plaintiff possessed or was entitled to the property, (2) the defendant exercised dominion or control over the property and excluded the plaintiff, (3) the plaintiff demanded the return, and (4) the defendant refused to

---

[1] Defendant in its Reply argues that the Court should also dismiss Plaintiff's breach of contract claim. Def. Ticketmaster, L.L.C.'s Reply to Pl.'s Resp. to Ticketmaster, L.L.C.'s Mot. for J. on the Pleadings ("Reply") 8, ECF No. 18. A party should not use a reply brief to introduce new arguments. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894-95, (1990) (holding that a district court did not abuse its discretion in declining to admit new evidence not presented in the party's motion for summary judgment); *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 729 n.3 (S.D. Tex. 2010) ("The scope of the reply brief must be limited to addressing the arguments raised by the response.") (internal quotations and punctuation omitted). Because Defendant did not seek dismissal of the contract claim in its Motion and Plaintiff has not had the opportunity to brief the issue, the Court will not address this argument.

return the property. *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009); *Waisath v. Lack's Stores Inc.*, 474 S.W.2d 444, 447 (Tex. 1971).

Here, Plaintiff has sufficiently alleged the elements of conversion. First, Plaintiff alleges that it was entitled to the property — namely the money that was paid for tickets to the soccer game that Plaintiff promoted. *See* Compl. ¶¶ 9, 12, 23. Second, Plaintiff alleges that Defendant still has control over that property because it sold tickets to the soccer game and has not given that money to Plaintiff. *See* Compl. ¶¶ 7-9, 23. Third, it can be inferred from the facts that Plaintiff demanded the property because Plaintiff specifically asked Defendant for its audit reports after expressing dissatisfaction with the payout from ticket sales. *See* Compl. ¶¶ 9-12, 23. And fourth, it can be inferred that Defendant refused to turn over the money because Plaintiff has hired an expert and filed this lawsuit in order to recover the money allegedly owed to them. *See* Compl. ¶¶ 9-12, 23.

If a plaintiff alleges that the specific chattle converted was money, as in this case, a plaintiff must show the money (1) was delivered to the defendant for safekeeping, (2) was intended to be kept segregated, (3) was substantially in the form in which it is received or intact, and (4) was not the subject of a title claim by the defendant. *Estate of Townes v. Townes*, 867 S.W.2d 414, 419-20 (Tex. App. 1993); *see also Jones v. Hunt*, 12 S.W. 832, 833 (Tex. 1889).

Plaintiff has pleaded the required elements for the conversion of money. First, Plaintiff alleges the money was delivered to Defendant for safekeeping and held for the benefit of Plaintiff. *See* Compl. ¶¶ 5, 9, 23. Second, it can be inferred that the funds were intended to be segregated in some fashion given that Plaintiff alleged that Defendant's process is to sell the tickets over a number of weeks, and then forward the profits after auditing the sales. *See* Compl.

5

¶¶ 5, 7-9, 23. Third, it can be inferred from the facts that the money received was kept in-tact via a separate account or similar accounting procedure. *See* Compl. ¶¶ 5, 7-9, 23. Fourth, and finally, Defendant does not claim title to these funds. *See* Reply 2.

Defendant attempts to avoid this analysis by arguing that the money cannot be converted because it is "lost profits," and points to *Rente Co. v. Truckers Express, Inc.*, 116 S.W.3d 326, 333 (Tex. App. 2003), in support. Mot. 4-5. In *Rente*, the plaintiff had rented trucks to the defendant. *Rente*, 116 S.W.3d at 329. After a few months of a successful business relationship, the parties had a falling out. *Id*. at 328-29. As a result, the defendant stopped paying the rent. *Id*. at 329. The court held as a matter of law that the amounts owed for the trucks "are not identifiable, specific chattels capable of being converted; rather, they are alleged indebtedness." *Id.* at 332.

*Rente* is distinguishable from this case because the money for the truck rental was never delivered to the defendant for safekeeping, and thus was not converted. *See Estate of Townes*, 867 S.W.2d at 419-20 (holding that delivery of the money to the defendant for safekeeping is a necessary element to establish conversion of money). In contrast here, Plaintiff alleges that the money was delivered to Defendant Ticketmaster for safekeeping. *See* Compl. ¶¶ 5, 9, 23.

This case is more analogous to *City of San Antonio v. Hotels.com*, No. SA-06-CA-381-OG, 2007 WL 1541184 (W.D. Tex. Mar. 20, 2007). In that case, the court held that the City of San Antonio had successfully pleaded a claim for conversion by alleging that the defendants, online hotel booking companies, received money from customers booking hotel rooms, and then unlawfully failed to forward the tax money to the City of San Antonio. *See City of San Antonio*, 2007 WL 1541184, at *3-4, *12 (applying Texas law). Substitute the ticket

6

receipts for a soccer game instead of tax on hotel rooms, and it is the same situation here — Defendant received money from customers, and then allegedly did not forward the money to Plaintiff. *See* Compl. ¶¶ 5, 7, 12, 23. So, as in *Hotels.com*, Plaintiff has sufficiently alleged a claim for conversion.

Defendant also argues that to sustain a claim for conversion, Plaintiff "would have to plead and prove that Plaintiff entered into a contractual relationship with Defendant whereby Plaintiff entrusted Defendant with Plaintiff's money or property for safekeeping." Reply 1. However, Defendant cites no law to support this assertion, and the Court has found none. Rather, the existence of a contract is not dispositive. For example, in *Estate of Townes*, there was no contract between the parties, yet the court held that the evidence conclusively established conversion. 867 S.W.2d at 419-20. In sum, there need not be a contractual relationship between the parties to establish conversion.

In conclusion, the Court holds that Plaintiff has sufficiently pleaded the required elements of conversion, and Plaintiff's claim for conversion survives this Motion.

**C.     Fraud**

Defendant argues that Plaintiff's claim for fraud lacks the factual support necessary to state a claim under the Federal Rules of Civil Procedure. Mot. 7-9. Plaintiff responds that it has alleged sufficient facts to prove all the elements of fraud. Resp. 5-7.

"Under Texas law, the elements of a fraud claim are: (1) a material representation; (2) that was false when made; (3) the speaker either knew the representation was false or asserted it without knowledge of its truth; (4) the speaker intended that it be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result. *Malacara v. Garber*, 353 F.3d 393, 403-04

(5th Cir. 2003) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 322 (5th Cir. 2002); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). Reliance is a critical and necessary element: the Plaintiff must show both "actual and justifiable reliance." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923-24 (Tex. 2010). "A plaintiff establishes reliance by showing the defendant's acts and representations induced him to either act or refrain from acting, to his detriment." *Worldwide Asset Purchasing, L.L.C. v. Rent–A–Ctr. East, Inc.*, 290 S.W.3d 554, 566 (Tex. App. 2009).

A claim for fraud requires greater factual specificity than an ordinary claim. Fed. R. Civ. P. 9(b). The plaintiff must: (1) specify the allegedly fraudulent statements; (2) identify the speaker; (3) state when and where the statements were made; (4) and explain why the statements were fraudulent. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th. Cir. 1997).[2]

Here, Plaintiff's claim for fraud fails because Plaintiff pleaded no facts that show reliance. Plaintiff alleges that Defendant made a false statement when it reported that the ticket sales were only 13,151. Compl. ¶ 21. Plaintiff alleges it then relied on that inaccurate number and was injured by receiving inadequate compensation. Compl. ¶ 21; Resp. 6. However, Plaintiff fails to provide any facts that suggest Plaintiff detrimentally acted or refrained from acting based on Defendant's numbers. *See* Compl. ¶¶ 9-11, 21. A conclusory statement is

---

[2] Federal courts apply federal procedural law, including the heightened pleading standard of Rule 9(b), in diversity cases. *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 426–27 (1996); *Erie*, 304 U.S. at 78; *Williams*, 112 F.3d at 177-79 (applying Rule 9(b) of the Federal Rule of Civil Procedure to a state law fraud claim).

8

simply not sufficient to state a claim for fraud under Rule 9(b) of the Federal Rules of Civil Procedure and *Twombly*. *See* Fed. R. Civ. P. 9(b); *Twombly*, 550 U.S. at 555.

Moreover, Plaintiff indirectly admits that it did not rely on Defendant's numbers when Plaintiff states that it was "unsatisfied with Defendant's ticket-sales calculations." Compl. ¶ 10.; *see also* Resp. 2 ("Plaintiff . . . disagreed with the attendance Defendant reported."). Instead of relying on the numbers, Plaintiff sought to dispute the numbers by obtaining the audit reports and hiring an expert to determine the actual attendance numbers by examining video footage. Compl. ¶¶ 9-11. This shows rejection, not reliance. In sum, Plaintiff has failed to allege the necessary element of reliance. Therefore, the Court holds that Plaintiff's fraud claim fails as a matter of law.

### D. Negligence

Defendant argues that Plaintiff's negligence claim fails because Defendant did not owe a legal duty to Plaintiff. Mot. 10. Moreover, Defendant argues that even if Plaintiff has alleged a duty, the economic loss rule bars recovery on Plaintiff's negligence claim. Mot. 11. Plaintiff responds that negligence principles impose a duty on Defendant to accurately report the number of tickets sold. Resp. 8. Additionally, Plaintiff argues that the economic loss rule does not bar its negligence claim. Resp. 8-10.

To establish a claim for negligence under Texas law, the plaintiff must show (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) as a result, plaintiff suffered damages. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

9

1. **Duty**

As a matter of law, courts determine whether the facts surrounding the case warrant imposition of a duty. *Greater Houston Transp. Co.*, 801 S.W.2d at 525*; see also Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). "Liability is grounded in the public policy behind the law of negligence which dictates every person is responsible for injuries which are the reasonably foreseeable consequence of his act or omission." *El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex. 1987) (superseded on other grounds by statute). To determine the existence of a duty, the court examines "the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Greater Houston Transp. Co.*, 801 S.W.2d at 525-26; *see also United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947) (Hand, J.). Of these factors, foreseeability is "the foremost and dominant consideration." *El Chico*, 732 S.W.2d at 311. An injury is foreseeable when a reasonable person under the circumstances would have anticipated the injury. *McCullough v. Amstar Corp.*, 833 S.W.2d 312, 315-16 (Tex. App. 1992).

   a. **Imposition of duty based on negligence principles**

To determine whether Plaintiff sufficiently pleaded that Defendant owed it a duty to accurately account for all tickets purchased, the Court first examines the extent, likelihood and foreseeability of the injury. *See Greater Houston Transp. Co.*, 801 S.W.2d at 525-26. In this case, the extent of injury caused by an inaccurate count could be quite large because Defendant, as the ticket seller, collects the revenue from the ticket sales, but does not incur any of the cost of putting on the event — an obligation falling on Plaintiff as the promoter. Therefore, an

inaccurate ticket count could result in a significant injury to Plaintiff whose expenses would go un-reimbursed. *See Carroll Towing*, 159 F.2d at 173 (analyzing the potential for damage if a barge breaks from the ties in a crowded harbor). The likelihood of injury also could be significant. Plaintiff's allegations suggest that without a duty to accurately account, Defendant has a tempting incentive to underreport and retain the extra profits. *See* Compl. ¶ 12; *Greater Houston Transp. Co.*, 801 S.W.2d at 526-27 (focusing on the low probability of injury to deny finding a duty). And most critically, the possibility of injury is highly foreseeable. *See El Chico*, 732 S.W.2d at 311 (relying upon the fact that it highly foreseeable that alcohol would impair one's ability to drive a car). Financial losses due to miscounts are foreseeable given the large volume of individual ticket sales — likely tens of thousands of transactions per event. In summary, the pleadings suggest that without a duty to account, there is a reasonable likelihood of a significant injury that is foreseeable.

On the other side of the equation, the Court must examine the costs of imposing this burden. *See Greater Houston Transp. Co.*, 801 S.W.2d at 525-26; *see also Carroll Towing*, 159 F.2d at 173. This is difficult because of the lack of evidence inherent in a 12(c) motion for judgment on the pleadings. Specifically, the Court has no evidence suggesting what extra precautions would have prevented the alleged miscount, and what those precautions might cost. That said, the contract between Defendant and UTEP likely already imposes the duty on Defendant to accurately account for all tickets purchased. *See* Reply 1-2. The contract likely imposes this duty for the benefit of UTEP because without that provision, Defendant in theory could underreport the sales and keep the extra profits. Therefore, the additional cost of having

the law extend this duty for the benefit of Plaintiff appears to be minimal or non-existent because the duty is likely already imposed for UTEP's benefit.

Moreover, the very business model of having one company sell the tickets, another company promote the event, a third entity own the facility, along with a variety of other entities contributing to the event requires that the ticket seller have an obligation to accurately report the ticket sales. This must be true because the money from the sales of tickets flows to the ticket seller, yet the cost of the event and the risk is largely born by the promoter, the venue, the talent, and others. Without a duty to accurately account, the ticket seller could again in theory underreport, and keep the extra profits to the detriment of all the others who worked on the event.

The Court next examines whether imposing a duty and preventing the injury outweighs the cost. *See Greater Houston Transp. Co.*, 801 S.W.2d at 525-26. Here, Plaintiff's allegations suggest that there is a foreseeable risk that without a duty to account for all tickets purchased, Defendant could underreport to keep the extra profits, and thus cause Plaintiff significant injury. Imposing a duty to prevent that foreseeable injury outweighs the cost of avoidance because the cost of imposing the duty for the benefit of Plaintiff appears to be minimal or non-existent. Therefore, the Court holds that Plaintiff has sufficiently pleaded a duty under general negligence principles. *See Greater Houston Transp. Co.*, 801 S.W.2d at 525-26; *El Chico*, 732 S.W.2d at 311; *Carroll Towing*, 159 F.2d at 173. Additional facts and evidence may persuade this Court to not impose a duty, but at this stage, it is plausible that Ticketmaster owed Plaintiff a duty to accurately account for all tickets purchased.

### b. Contract and relationship between the parties

Defendant also argues that Plaintiff cannot establish a duty because Defendant has no relationship with Plaintiff; instead its sole contractual relationship is with UTEP. Mot. 11. However, Texas law does not require contractual privity to establish a duty of care. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005); *Davis v. Dallas Cnty.*, 541 F. Supp. 2d 844, 850-53 (N.D. Tex. 2008). Moreover, the contract between Defendant and UTEP could impose a duty on Defendant for the benefit of Plaintiff. In fact, Texas law recognizes that "[o]ne who undertakes to perform a contract assumes a duty to all persons to take reasonable care not to injure them or their property in the performance of that contract, and one who is not privy to the contract may assert a claim for negligence for a breach of that duty." *Goose Creek Consol. Indep. Sch. Dist. of Chambers and Harris Cntys. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 501 (Tex. App. 2002); *see also In re Weekley Homes*, 180 S.W.3d at 132 (holding that a contractor performing house repairs had an independent duty of care to a third party injured by conditions created by the repairs). And finally, the facts suggest that although Defendant may have never formally contracted with Plaintiff, there must have been some relationship given that Defendant sold the tickets to Plaintiff's event. *See* Compl. ¶¶ 7, 10-12. In sum, contractual privity is not required to allege a duty, and Plaintiff has shown the existence of a relationship between it and Defendant sufficient to allege a duty of care.

### 2. Economic loss rule

Defendant argues that even if Plaintiff sufficiently alleged a duty, the economic loss rule bars recovery as a matter of law. Mot. 11. According to Defendant, the economic loss rule prevents a party like Plaintiff from recovering under a negligence theory when the party only suffered economic damage and not physical damage. Mot. 13.

That statement of the law no longer holds weight. Since the filing of this Motion, the Supreme Court of Texas has issued an opinion reasoning that a bright line rule barring negligence actions for purely economic losses is simply too broad. *See Sharyland Water Supply Corp. v. City of Alton*, ---S.W.3d ----, 55 Tex. Sup. Ct. J. 46, 2011 WL 5042023, at *7-8 (Tex. 2011) (unanimous). The court explained that it has applied the economic loss rule in only two specific situations: "cases involving defective products or failure to perform a contract." *Id.* at 7. Outside those contexts, the court has avoided a broad economic loss rule because the issues do not lend themselves "to easy answers or broad pronouncements." *Id.* at 8. The court then explained that the proper course is to evaluate the facts and issues of the individual case. *See id.* at *8 & n.25, *9 ("[T]he question is not whether the economic loss rule should apply where there is no privity of contract (we have already held that it can), but whether it should apply at all in a situation like this."); *see also* Vincent R. Johnson, *The Boundary–Line Function of the Economic Loss Rule*, 66 Wash. & Lee L. Rev. 523, 585 (2009).[3]

Here the facts of the case are not sufficiently developed to apply the framework outlined by *Sharyland*. Although it is clear that this case does not involve products liability, this case may involve a failure to perform a contract. Plaintiff alleges that it is a third party beneficiary to the contract between UTEP and Defendant. Compl. ¶ 16. If that allegation is found to be true, then

---

[3] In *Sharyland*, the Texas Supreme Court did not decide "whether purely economic losses may ever be recovered in negligence" cases because the court concluded that the plaintiff had suffered physical damages. 2011 WL 5042023, at *9. However, the court did state:
> [w]hile it is impossible to analyze all the situations in which an economic loss rule may apply, it does not govern here. The rule cannot apply to parties without even remote contractual privity, merely because one of those parties had a construction contract with a third party, and when the contracting party causes a loss unrelated to its contract.

*Id*.
This dicta suggests the Texas Supreme Court has a narrow conception of the economic-loss rule. And this dicta is highly persuasive to this Court in making an "Erie guess" because it was unanimous, well-reasoned, and a recent decision. *See Krieser*, 166 F.3d at 739, 743.

Plaintiff may be able to only recover under contract law.  *See Sharyland*, 2011 WL 5042023, at *7 ("When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone.").  On the other hand, if Plaintiff is not a third party beneficiary, then Plaintiff may be able to recover under its negligence theory.  *See id.* at 8-9.  The Court cannot determine whether Plaintiff is a third party beneficiary because the issue has not been briefed by both parties.

Finally, even if the Court were to find that Plaintiff was not a third party beneficiary, *Sharyland* suggests that this Court should examine the specific issues and facts of the case to determine whether the economic-loss rule should bar recovery.  *See Sharyland*, 2011 WL 5042023, at *8 & n.25, *9.  But again, with just the limited facts available from the pleadings, the Court cannot conduct that analysis.  *See id.* at *1, *9 (examining the issue based on a jury's findings of fact) and the Court must conclude that the economic loss rule does not bar Plaintiff's claim.

### III. CONCLUSION

For the foregoing reasons the Motion is **GRANTED** in part and **DENIED** in part.  The Motion is **GRANTED** with respect to the fraud claim, and the fraud claim is **DISMISSED**.  The Motion is **DENIED** with respect to the negligence and conversion claims.

**SO ORDERED**.

**SIGNED** on this 29th day of November, 2011.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

15