IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| CLUB ESCAPADE 2000, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | EP-11-CV-166-KC |
| § | |
| TICKETMASTER, L.L.C., § | |
| § | |
| Defendant. § | |

## ORDER

On this day, the Court considered "Defendant's Motion for Summary Judgment" ("Motion"), ECF No. 30, and "Defendant's Motion to Exclude Expert Testimony and Opinions of Vic Ellisor" ("Motion to Exclude"), ECF No. 24. For the reasons set forth below, the Court **GRANTS** the Motion, and **DENIES** the Motion to Exclude as moot.

**I.   BACKGROUND**

Plaintiff Club Escapade 2000, Inc. produced a soccer match held at the University of Texas El Paso's ("UTEP") Sun Bowl Stadium on March 25, 2009. Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. ("Response") Ex. C ("Pl.'s Facts") ¶¶ 3, 7, ECF No. 35-1. The match featured Mexico City rivals Cruz Azul and Club America. *See id.* ¶ 3. Defendant Ticketmaster, L.L.C. sold the tickets to the match. *See* Resp. Ex. A ¶ 4, ECF No. 35-1. Defendant had a contract with UTEP that gave it the exclusive right to sell and distribute tickets for events held at Sun Bowl Stadium. *Id.*

According to Plaintiff, the event was "extremely popular" — traffic was backed up on the highways and news outlets reported large crowds of twenty to forty thousand people attending.

*Id.* ¶ 7. The president of Club Escapade, Nereo Tavira ("Tavira"), estimates that "there were approximately 25,000 people in attendance." *Id.*

The day after the match, a UTEP representative reported to Tavira that 24,457 tickets had been sold. *See id.* ¶ 8; Pl.'s Facts ¶ 52; Mot. Ex. A-22, at CE 002-03.[1] UTEP generated this number based on Defendant's computer system. Pl.'s Facts ¶ 43. However, soon thereafter, a UTEP representative said she had been mistaken and submitted a revised count of 11,306. *See* Resp. Ex. A ¶ 9; Pl.'s Facts ¶ 52; Mot. Ex. A-22, at CE 002-03.

Tavira was surprised by the low ticket count and began investigating. *See* Resp. Ex. A ¶ 10. During that investigation, Tavira discovered that on the day before the event, March 24, 2009, Defendant's audit report stated that the number of tickets sold was 14,408. *Id.* ¶ 10. The very next day, though, an audit report stated that the number of sales dropped to 11,098. *Id.* According to Plaintiff, the two audit reports (collectively "Audit Reports") were suspicious because there were no refunds or exchanges by ticket purchasers. *Id.*

Based on this suspicion, Plaintiff hired an expert in digital imaging who examined the video footage of the soccer match. *See id.* ¶ 11. Plaintiff's expert estimated that attendance was likely as high as 24,311. *Id.*

On March 24, 2011, Plaintiff sued Defendant alleging breach of contract, negligence, conversion, and fraud under Texas state law. Notice of Removal 1, ECF No. 1; Pl.'s First Am. Compl. ("Complaint") ¶¶ 13-23, ECF No. 10. On November 29, 2011, the Court dismissed

---

[1] The citations to Defendant's Appendix do not include an ECF document number because the file was too large to upload to CM/ECF. *See* Text Notice, ECF No. 31.

Plaintiff's claim for fraud. *Club Escapade 2000, Inc. v. Ticketmaster, L.L.C.*, No. EP–11–CV–166–KC, 2011 WL 5976918, at *8 (W.D. Tex. Nov. 29, 2011).

On January 19, 2012, Defendant moved for summary judgment on Plaintiff's claims for breach of contract, negligence, and conversion. Mot. ¶ 2. In support of its Motion, Defendant submitted a substantial amount of evidence. Mot. ¶2; *see generally* App. in Supp. of Def.'s Mot. for Summ. J. ("Defendant's Appendix"). First, Defendant submitted a report by its own expert who estimated that the crowd was between 12,000 and 13,500. Supplement to Def.'s App. Ex. K, at 7, ECF No. 34.[2]

Second, Defendant submitted undisputed evidence explaining why the UTEP representative had first reported 24,457 tickets had been sold, and then changed that number to only 11,306.[3] Mot. ¶¶ 34-37 (citing Mot. Ex. A-9). According to Defendant, a student intern made a calculation error. Mot. Ex. A-9. Defendant presented an email from the student intern that stated:

> In calculating the amount of tickets sold for that event (to get the rebate figures) by mistake I added up ADULT, J-UNIV, and TOTAL tickets sold, as opposed to only adding up ADULT and J-UNIV tickets . . . . This will give you 24,457 units as opposed to the actual 11,306 tickets sold.

---

[2] To assist the reader in finding citations, the Court references the page numbers that the CM/ECF docketing system generated.

[3] In its statement of facts, Plaintiff appears to deny that Defendant's evidence fully explains the misreporting, but does not present any evidence or explanation why it does not. *See* Pl.'s Facts ¶¶ 52-55. Because Plaintiff only asserts a bald claim challenging the evidence, and nothing more, the Court views this evidence as undisputed. *See* Fed. R. Civ. P. 56(c) (If a party fails . . . to properly address another party's assertion . . . the court may . . . consider the fact undisputed for purposes of the motion"); Standing Order Governing Mots. for Summ. J. 2, (W.D. Tex. Jan. 5, 2011) (J. Cardone) ("[E]ach denial in a nonmovant's Response to Proposed Undisputed Facts, must be followed by a specific citation to particular parts of (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial.").

3

Mot. Ex. A-9.

Third, Defendant submitted evidence that explains the apparent inconsistency in the Audit Reports. Mot. ¶ 32 (citing Mot. Ex. C). According to Defendant, the Audit Reports showed only 11,098 sold on March 25, 2009, when the day before the number was 14,408 tickets sold, because Plaintiff returned 4,243 tickets.[2] *See* Mot. Ex. C 19:10-20-3; Mot. Ex. C-6, at TM 3. Plaintiff admits it returned 4,243 tickets on March 24, 2009. Pl.'s Facts ¶ 49.

## II.    DISCUSSION

### A.    Standard

A court must enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

---

[2]  The numbers do not perfectly match up (14,408 minus 4,243 equals 10,165 and not 11,098) because there were other ticket sales during the day. *See* Mot. Ex. C-6, at TM 3-TM 4; Pl.'s Facts ¶ 46. Plaintiff admits there were other sales during the day. Pl.'s Facts ¶ 46.

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited by the movant do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

The court resolves factual controversies in favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### B.    Evidentiary Objections

As a preliminary matter, Defendant argues that the Court should exclude Plaintiff's expert and Nereo Tavira's estimates of the crowd size.  Mot. to Exclude ¶ 2; Mot. ¶ 24.  However, even relying on this evidence, the Court still grants summary judgment for the reasons explained below.  Accordingly, the Court need not consider Defendant's Motion to Exclude or its evidentiary objections and denies them as moot.

### C.    Governing Law

In this diversity case, Plaintiff brings three claims under Texas law: breach of contract, negligence, and conversion.  *See* Compl. ¶¶ 13-23; *Club Escapade*, 2011 WL 5976918, at *2-8.  In diversity cases, federal courts apply state substantive law.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999).  To determine the applicable state law, federal courts first look to state statutes and decisions of the state's highest court.  *See Erie* , 304 U.S. at 78; *Krieser*, 166 F.3d at 739.  If there is no law on point, then the federal court "must make an 'Erie guess'" on how the state's highest court would decide the issue. *Krieser*, 166 F.3d at 739, 743.  To make an "Erie guess," federal courts may look to the state supreme court's dicta, lower state court decisions, and decisions from other states.  *See id.* at 739-743; *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992).

### D.    Breach of Contract Claim

In its Motion, Defendant seeks summary judgment on Plaintiff's breach of contract claim. Mot. ¶ 8.  In response, "Plaintiff concedes that its claim for breach of contract should be abandoned."  Resp. ¶ 14, ECF No. 35.  Therefore, the Court grants Defendant's Motion in

respect to the breach of contract claim, and accordingly dismisses the breach of contract claim. Thus, Plaintiffs' negligence and conversion claims are the only remaining issues before the Court. The Court examines each in turn.

### E. Negligence

Defendant argues that Plaintiff's negligence claim cannot survive summary judgment because Plaintiff's circumstantial evidence is too tenuous to establish a breach by Defendant. *See* Mot. ¶¶ 27, 33, 37; Reply 2, ECF No. 37. Plaintiff responds with evidence that the crowd was bigger than the number of tickets sold, the Audit Reports were inconsistent, and UTEP's reports were inconsistent. *See* Compl. ¶¶ 8-14; Resp. Ex. A ¶¶ 7-12. Plaintiff suggests this circumstantial evidence is enough to establish that Defendant breached its duty to accurately account for all tickets sold. *See* Resp. ¶ 13.

To establish a claim for negligence under Texas law, the plaintiff must show (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) as a result, plaintiff suffered damages. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam); *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

A plaintiff may satisfy the elements of a negligence claim via circumstantial evidence. *Hayes v. United States*, 899 F.2d 438, 449 (5th Cir. 1990); *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998). "Nevertheless, when circumstances are consistent with either of two factual scenarios and one is no more probable than the other, neither can be inferred." *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 237 (5th Cir. 2003) (citing *Summers v. Fort Crockett Hotel*, 902 S.W.2d 20, 25 (Tex. App. 1995); *Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d

391, 400 (Tex. App. 1993)); *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 729 (2003) (per curiam); *Gonzalez*, 968 S.W.2d at 936.  The focus is on whether a reasonable fact finder could find it more likely than not that the defendant was negligent.  *See Hayes*, 899 F.2d at 449.

In this case, no reasonable jury could find that it is more likely than not that Defendant breached its duty to accurately account for all tickets sold.  To establish a breach, Plaintiff relies on Defendant's Audit Reports, which show the number of tickets sold decreased the day of the event.  Resp. 13.  Because there were no refunds or exchanges, Plaintiff appears to suggest that the decrease must have been the result of Defendant's failure to accurately account for all tickets sold.  *See* Resp. ¶ 13.  But Plaintiff admits that it returned 4,243 tickets the day before the event.  Pl.'s Facts ¶ 49; *see also* Mot. Ex. C-6, at TM 3 (showing an entry of "-4,243" tickets).  Thus, the fluctuating Audit Reports are not suspicious because the number of tickets sold must decrease when Plaintiff returned 4,243 tickets.  In other words, the only reasonable inference to make from this evidence is that Defendant properly took account of Plaintiff's return, and thus properly accounted for all tickets sold.  *See Flock*, 319 F.3d at 237; *see also Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468 (1992) (collecting cases) ("[I]nferences must be reasonable in order to reach the jury.").

Given that the Audit Reports do not help Plaintiff's case, Plaintiff is left with evidence that there were more people in the crowd and an inconsistent report from UTEP in support of its negligence claim.  Even in its best light, this is not sufficient evidence for a reasonable jury to find it more likely than not that Defendant breached its duty to accurately account for all tickets sold because there are too many other possible explanations beyond a breach by Defendant.  *See Flock*, 319 F.3d at 237;  237; *Gonzalez*, 968 S.W.2d at 936.  First, there are a number of reasons

why there may have been more people in the stadium than the number of tickets sold.[3] For example, soccer fans could have snuck into the event without paying, bribed security to gain entry, or created counterfeit tickets. Moreover, one of the many employees at the venue could have wrongly sold tickets and failed to report those sales to either Defendant or Plaintiff. In other words, there is no evidence showing that a failure on the part of the Defendant was more likely than not the reason there were more people in the stadium.

Second, Plaintiff points to the fact that a UTEP representative initially reported that 24,457 tickets had been sold, but then changed that number to only 11,306. Resp. ¶ 13 (citing Resp. Ex. A ¶ 8). However, Plaintiff fails to explain how this inconsistent report by UTEP shows that Defendant breached its duty. Plaintiff appears to want the fact-finder to infer UTEP made a mistake because Defendant breached its duty, but Plaintiff has no evidence to support that inference. *See Star Enter. v. Marze*, 61 S.W.3d 449, 459 (Tex. App. 2001) (explaining that inferences must be "fairly drawn from the facts in evidence and not on surmise or speculation"). UTEP did have access to Defendant's audits and databases, but there is nothing beyond speculation that the error stems from Defendant. *See* Pl.'s Facts ¶ 43; *Star Enter.*, 61 S.W.3d at 459.

---

[3] On a motion for summary judgment, the Court resolves factual controversies in favor of the nonmoving party. *See Little*, 37 F.3d at 1075. Here, Plaintiff submitted evidence that there were more people in the stadium than the number of tickets sold. *See* Resp. Ex. A ¶ 11. In response, Defendant submitted evidence that the number of people in the stadium roughly matched the number of tickets sold. Supplement to Def.'s App. Ex. K, at 7. Because the Court resolves factual controversies in favor of the nonmoving party on a motion for summary judgment, the Court must assume that the number of people in the stadium exceeded the number of tickets sold. *See Little*, 37 F.3d at 1075.

Even assuming Plaintiff could connect the mistake to Defendant, Plaintiff has no evidence that shows the significance of the mistake. This error could have been just a routine mistake that does not amount to a breach of a duty to accurately account for all tickets sold. And Defendant has presented undisputed evidence of just that — the numbers differed because a student intern made a mathematical error. Mot. Ex. A-9.

In sum, "the circumstances" that Plaintiff relies on "could give rise to any number of inferences, none more probable than the other.'" *See Marathon*, 106 S.W.3d at 729 (quoting *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex. 1997); *see also Little*, 37 F.3d at 1078-79 (granting summary judgement because the evidence only led to speculative theories with none being more plausible than the others). It is true that a plaintiff does not need to "exclude all possibilities" to rely on circumstantial evidence. *Sw. Forest Indus., Inc. v. Bauman*, 659 S.W.2d 702, 705 (Tex. App. 1983). But Plaintiff needs enough evidence that a reasonable fact-finder could find it more likely than not that Defendant breached its duty. *See Flock*, 319 F.3d at 237; *Gonzalez*, 968 S.W.2d at 936. And Plaintiff's evidence does not satisfy that burden. Accordingly, the Court holds that Plaintiff's negligence claim cannot survive summary judgment.

### F.   Conversion

Defendant argues that Plaintiff's conversion claim cannot survive summary judgment for the same reasons Plaintiff's claim for negligence failed. *See* Mot. ¶ 38. Specifically, Defendant argues that Plaintiff's conversion claim fails because Plaintiff lacks sufficient evidence to establish two necessary elements — that it was entitled to the property and that Defendant exercised dominion or control over the property. *See* Mot. ¶ 38. In response, Plaintiff argues that the number of people in the stadium, the inconsistent Audit Reports, and UTEP's initial

report of 24,457 tickets sold creates a fact issue on whether Defendant wrongly collected money for the sales of tickets that it did not forward to Plaintiff. Resp. ¶ 7.

To state a claim for conversion, the plaintiff must show that (1) the plaintiff possessed or was entitled to the property, (2) the defendant exercised dominion or control over the property and excluded the plaintiff, (3) the plaintiff demanded the return, and (4) the defendant refused to return the property. *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009); *Waisath v. Lack's Stores Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). If a plaintiff alleges that the specific chattel converted was money, as in this case, a plaintiff must also show the money (1) was delivered to the defendant for safekeeping, (2) was intended to be kept segregated, (3) was substantially in the form in which it is received or intact, and (4) was not the subject of a title claim by the defendant. *Estate of Townes v. Townes*, 867 S.W.2d 414, 419-20 (Tex. App. 1993); *see Jones v. Hunt*, 12 S.W. 832, 833 (Tex. 1889).

A plaintiff can establish a conversion claim via circumstantial evidence. *See Star Enter.*, 61 S.W.3d at 459 ("[A]n ultimate fact may be proven by circumstantial evidence."); *Shaw's D.B. & L., Inc. v. Fletcher*, 580 S.W.2d 91, 95 (Tex. Civ. App. 1979) (finding that circumstantial evidence was sufficient to sustain the finding of conversion). However, the inferences must be "fairly drawn from the facts in evidence and not on surmise or speculation." *Star Enter.*, 61 S.W.3d at 459; *see Flock*, 319 F.3d at 237; *Marathon*, 106 S.W.3d at 729.

Here, Plaintiff's evidence of a conversion claim is insufficient for the same reasons Plaintiff's negligence claim could not survive summary judgment. To win at trial, Plaintiff would need the fact-finder to infer two necessary elements — that it was entitled to additional money and Defendant wrongly exercised control over that money — based on evidence that there

were more people in the stadium and UTEP gave inconsistent reports.[4] That evidence, even its best light, is insufficient because it only amounts to mere speculation — "the circumstances 'could give rise to any number of inferences, none more probable than the other.'" *See Marathon*, 106 S.W.3d at 729; *Flock*, 319 F.3d at 237; *Little*, 37 F.3d at 1078-79.

Plaintiff is correct that more people could have been in the stadium because Defendant wrongly sold extra tickets and then hid those proceeds from Plaintiff. But Plaintiff has no evidence to make that conclusion — i.e. to pin responsibility on Defendant. Rather, it is equally likely that there were more people in the stadium because one of the many employees at the venue wrongly sold tickets and did not report those sales to either Defendant or Plaintiff. Or perhaps, more people were in the stadium because of lax security or counterfeit tickets. In sum, Plaintiff's evidence that it was entitled to the property and that Defendant exercised control over it is too tenuous for a reasonable jury to find in its favor. *See Marathon*, 106 S.W.3d at 729; *Flock*, 319 F.3d at 237; *Little*, 37 F.3d at 1078-79. Accordingly, the Court holds that Plaintiff's conversion claim cannot survive summary judgment.

## III.   CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion, ECF No. 30, and **DISMISSES** Plaintiff's negligence, conversion, and breach of contract claims. The Court **DENIES** as moot the Motion to Exclude, ECF No. 24.

The Clerk shall close the case.

---

[4] Plaintiff also attempts to rely on evidence that Defendant's Audit Reports show a decrease in the number of tickets sold even though there were no refunds or exchanges. *See* Resp. ¶ 7. But as explained above, that evidence does not support Plaintiff's case because Plaintiff admits to returning thousands of tickets. Pl.'s Facts ¶ 49; *see also* Mot. Ex. C-6, at TM 3 (showing an entry of "-4,243" tickets).

**SO ORDERED**.

**SIGNED** on this 30th day of March, 2012.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE